**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Merle Wallis, | No. CV-23-8614-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Jonathan Merle Wallis's appeal from the Commissioner of the Social Security Administration's ("SSA" or "Defendant") denial of Social Security benefits. (Doc. 8-3). The appeal is fully briefed (Doc. 13; Doc. 17; Doc. 18), and the Court now rules.

## I.    BACKGROUND

The issues presented in this appeal are: (1) whether the ALJ erred in rejecting the medical opinions of Plaintiff's treating medical sources; and (2) whether Defendant exceeded his statutory authority under 42 U.S.C. § 405(b)(1) and deprived Plaintiff of his constitutional right to due process of law.

### A.    Factual Overview

Plaintiff was 37 years old on his alleged disability onset date of April 1, 2018. (Doc. 13 at 5). He has a high school education and a history of past relevant work as a heavy equipment operator and fast-food worker. (*Id.*) Plaintiff filed his disability insurance benefits (DIB) application on November 5, 2018, alleging disabilities

beginning on April 1, 2018, including obesity, multilevel degenerative disc disease, left ankle impingement syndrome, carpal tunnel syndrome, and hypertension. (Doc. 8-3 at 14; 17). Plaintiff also filed an application for supplemental social security income (SSI) on October 15, 2018. (*Id.* at 14). An ALJ denied Plaintiff's claim on December 22, 2020, after a telephonic hearing. (*Id.* at 22–23).  The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (*Id.* at 2).

Plaintiff appealed ALJ's decision to this Court, which, after considering the ALJ's decision, concluded that there remained "a serious question of whether Plaintiff is actually disabled." *Wallis v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08132-PHX-JAT, 2022 WL 2527116, at *10 (D. Ariz. 2022). The Court reasoned that this was because ALJ's hypothetical to the VE did not incorporate Plaintiff's limitation of sitting for six hours in an eight-hour workday, but the ALJ-determined residual functional capacity ("RFC") did include this limitation. *Id.* The Court found that "the ALJ needs to propose a hypothetical to the VE," including a six-hour sitting limitation as well as all of Plaintiff's other limitations, "before the ALJ could properly make a disability determination." *Id.* Accordingly, this Court reversed the ALJ's decision and remanded Plaintiff's claim for further proceedings. *Id.* at *11.

On remand, the ALJ again denied Plaintiff's claim on September 26, 2023. (Doc. 9-3 at 16). Before this Court is Plaintiff's appeal of the ALJ's decision. (Doc. 13).

## B.     The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See*

20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities;" and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability perform physical and mental work activities "despite his limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "his past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the

RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

## C.     The ALJ's Application of the Factors

Here, on remand, at Step One, the ALJ concluded that the record established that Plaintiff had not engaged in substantial gainful activity since April 1, 2018, the alleged onset date. (Doc. 9-3 at 8).

At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "multilevel degenerative disc disease, ankle impingement syndrome of the left lower extremity, [and] degenerative joint disease." (*Id.*)

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.F. Part 404. (*Id.* at 8–9). Subsequently, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a),

> except the claimant can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently. The claimant can stand and walk in combination approximately 2 hours daily and may sit approximately 6 hours daily. The claimant can seldom (5% or less often) ambulate on rough or uneven surfaces and can use a handheld assistive device when doing so. The claimant can occasionally climb ramps or stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. [T]he claimant can occasionally reach overhead bilaterally and can otherwise reach omnidirectionally frequently. The claimant cannot operate foot controls with the left lower extremity. The claimant should avoid concentrated exposure to

> vibration, hazards (e.g., dangerous machinery, unprotected heights), and to extreme cold temperatures and weather. The claimant may shift position between sitting and standing for a few minutes as frequently as every half hour without loss of productivity. The claimant requires a handheld assistive device when ambulating.

(*Id.* at 18).

At Step Four, the ALJ established that Plaintiff was unable to perform any past relevant work. (*Id.* at 14). At Step Five, the ALJ found that Plaintiff could make sufficient adjustments to perform a significant number of jobs in the national economy given his age, education, work experience, and RFC. (*Id.* at 15). Examples of such jobs included ink printer, lens inserter, and document preparer. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date through September 26, 2023. (*Id.* at 16).

## II.     LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial" evidence involves "more than a mere scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. See *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753

F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.   DISCUSSION

Plaintiff argues that the ALJ "committed harmful legal error" because the ALJ failed to properly consider the opinions of treating physicians Sarah Knievel, M.D. and Rishi Patel, M.D. (Doc. 13 at 8, 9, 12). In addition, Plaintiff claims that the 2017 revisions to the SSA medical evidence regulations exceed Defendant's statutory authority under the Social Security Act and deprive Plaintiff his constitutional right to due process of law. (*Id.* at 16). The Court addresses each of these arguments in turn.

### A.   Preponderance of the Evidence v. Substantial Evidence

As an initial matter, Plaintiff claims that the basis by which the ALJ is required to make his decision is a "preponderance of the evidence offered at the hearing or otherwise included in the record." (*Id.* at 8) (citing 20 C.F.R. § 404.953(a)). Defendant counters that Plaintiff's proposed "preponderance of the evidence standard" is incorrect and that the correct foundation by which an ALJ's decision must be supported is, in fact, substantial evidence. (Doc. 17 at 4) (citing *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022)).

Here, the Court agrees with Defendant. The Social Security Administration's 2017 amendments to its regulations require an ALJ's decision to reject any medical opinion to be supported by substantial evidence, not a preponderance of the evidence. *Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence [in the record]."); *see also Thomas*, 278 F.3d at 954 ("Substantial evidence means more than a mere scintilla, but

*less than a preponderance*.") (emphasis added). Thus, this Court will examine whether the ALJ's decision is supported by "substantial evidence" in its present analysis. *See Revels*, 874 F.3d at 654 (indicating that a court must not overturn a final denial of disability benefits unless the ALJ decision is "not supported by substantial evidence in the record" or is "based on legal error").

### B. Opinion of Treating Pain Management Specialist Dr. Knievel

Plaintiff argues that the ALJ did not provide sufficient justification for rejecting Dr. Sarah Knievel's opinion. (*Id.* at 11). Specifically, Plaintiff claims that the ALJ provided reasons without identifying which medical evidence in the record was inconsistent with Dr. Knievel's medical opinion, making the ALJ's reasons for rejecting Dr. Knievel's medical statement insufficient as a matter of law. (Doc. 13 at 11, 12). Further, Plaintiff asserts that the ALJ committed legal error by rejecting Dr. Knievel's opinion "simply [because it indicated] Plaintiff is 'completely debilitated.'" (Doc. 13 at 11).

Dr. Knievel, a pain management specialist, treated Plaintiff on September 4, 2018, and on December 10, 2018. (Doc. 8-8 at 76–81; 146–49). Dr. Knievel's Medical Source Statement to the SSA is also dated December 10, 2018. (*Id.* at 129, 133). In this Medical Source Statement questionnaire, Dr. Knievel identified Plaintiff's diagnoses, claimed symptoms, and job-related limitations. (*Id.* at 129–33). Under Plaintiff's "diagnoses," Dr. Knievel listed "[l]umbar radicular pain," and she affirmed that Plaintiff has "flare-ups that impact the function of [his] spine," "limitation in Range of Movement ["ROM"] of the [spine] after repetitive use," and "functional loss or functional impairment and or additional limitation of ROM of the [spine] after repetitive use." (*Id.* at 129).

As contributing factors to the above conditions, Dr. Knievel identified "Less movement than normal," "[e]xcess fatigability," "[p]ain on movement," and "[i]nterference with sitting, standing and/or weight-bearing." (*Id.*) In addition, Dr. Knievel affirmed that Plaintiff had "localized tenderness or pain to palpation for joints and/or soft tissue of the [spine]," and guarding or muscle spasm of the spine severe

enough to result in abnormal gait. (*Id.*)   Dr. Knievel also verified that Plaintiff had "[r]adicular pain and [other] signs or symptoms due to [radiculopathy in the lumbar spine and/or lower extremities]," including constant severe left lower extremity pain; mild right lower left extremity and severe left lower extremity "parasthesias and/or dysesthesias;" and mild right lower extremity and severe left lower extremity numbness. (*Id.* at 130)

In reference to Plaintiff's ability to work, Dr. Knievel declared that Plaintiff's experience of pain was "[c]onstantly" severe enough to interfere with attention and concentration. (*Id.*) Regarding Plaintiff's functional limitations in a competitive work situation, Dr. Knievel asserted that "in an 8 hour working day," Plaintiff could sit, stand, and walk for a total of "less than 2 hours" each, requiring 15-minute walks every 15 minutes and "sometimes" requiring unscheduled 15-minute breaks. (*Id.*) Dr. Knievel reported that Plaintiff required a job that permitted shifting positions between standing, sitting, or walking at will. (*Id.* at 131).

Additionally, per Dr. Knievel, "in an average 8 hour working day," Plaintiff's use of a cane or other assistive device was medically necessary while engaging in occasional standing or walking. (*Id.*) Further, in Dr. Knievel's opinion, "in a competitive work situation," Plaintiff should lift and carry less than 10 pounds, no more than occasionally. (*Id.*) Additionally, Dr. Knievel reported that Plaintiff had "significant limitations in doing repetitive reaching, handling, or fingering," and he could stoop or crouch 10 percent of an "8 hour working day." (*Id.* at 131–32). Finally, in Dr. Knievel's estimation, because of Plaintiff's impairments, Plaintiff was likely to be absent from work about four times a month on average. (*Id.* at 132).

Next, on the Medical Source Statement questionnaire, Dr. Knievel was asked to "[i]dentify the factors (e.g., the particular medical signs, laboratory findings, or other factors described above) that support[ed her] assessment." (*Id.*) In response to this, Dr. Knievel states only, "see chart note." (*Id.*) Plaintiff states that by responding as such, Dr. Knievel was "referring to treatment notes from the same day of [her] statement, as the basis for her [Medical Source Statement]." (Doc. 13 at 10). As pertinent here, Dr.

Knievel's treatment note, dated December 10, 2018, states:

> Introduction: This 37 year old male presents for back pain and neck pain.
> History of Present Illness: Pleasant gentleman with chronic lumbar radicular pain returns. Status post pain after injury in the early 2000. Failed conservative management previously including opioid and non-opioid. Discussed trialing Lyrica but he is kind of depressed that he is unable to provide for the family because he cannot work because of his severe pain and is concerned that the Lyrica can make depression worse. He sees providers in the Indian health clinic and they were going to fill out his disability paperwork for SSI. MRI with severe stenosis L5-S1….
> 1. back pain
> Severity level is 8. The problem is fluctuating. It occurs persistently. Location of pain is lower back. There is no radiation of pain. The patient describes the pain as stabbing. Symptoms are aggravated by bending, lifting and twisting. Symptoms are relieved by laying on his side.

(Doc. 8-8 at 146) (emphasis omitted). Other than "positive" findings for Plaintiff's anxiety and depression symptoms, under the "Review of Systems" and "Physical Exam" sections of the treatment note, Dr. Knievel documented all "normal" and "negative" findings. (Doc. 8-8 at 147–48). Of note, while Dr. Knievel's treatment note lists multiple spinal diagnostic tests "ordered" in June 2017, August 2017, and January 2018, it makes no mention of whether these tests were completed or what the results were.[1] (*Id.*)

Next, in the "Assessment/Plan" section of the treatment note, Dr. Knievel lists "Cervicalgia" and "Lumbago with sciatica, right [and left] side" under "Assessment." (*Id.* at 148–49). Under "Plan," Dr. Knievel wrote: "Disability paperwork was filled out, continue diclofenac and tizanidine. Hold on Lyrica if he is afraid of some of the side effects. Follow-up in 3-6 months, recommend continue weight loss. We can discuss injection therapy if interested next appointment." (*Id.* at 149).

---

[1] The MRI mentioned in the narrative portion of Dr. Knievel's December 10, 2019 treatment note above (Doc. 8-8 at 146), has no corresponding order date nor completion date.

- 9 -

On remand, the ALJ addressed Dr. Knievel's opinion as follows:

> The undersigned finds this opinion is not persuasive as it is not consistent with the record nor supported by the examinations performed. This opinion indicates the claimant is completely debilitated, but there is no evidence to suggest the claimant needs additional breaks and absence. Additionally, there is limited evidence including consistent abnormal gait, lower extremity strength, or other findings to show the claimant is unable to walk or stand for more than 15 minutes. The claimant has shown moderate stenosis, shoulder pain, and ankle dysfunction, which would reasonably limit the claimant's ability to stand and/or walk, but not to the point opined.

(Doc. 9-3 at 12).

Previously, under the "treating physician rule," courts in the Ninth Circuit distinguished among treating physicians, examining physicians, and non-examining physicians, with the greatest weight generally given to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted, vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, in March 2017, the SSA amended their regulations, and among other changes, abrogated the treating physician rule. *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). Consequently, these amended regulations govern all claims filed on or after March 27, 2017. (*Id.*) The amended regulations forbid an ALJ to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from ... medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.

Additionally, the amended March 2017 SSA regulations require an ALJ to "consider all medical opinions according to several enumerated factors, including

whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources." *Alonzo*, 2020 WL 1000024, at *3. The two "most important factors" are supportability and consistency, and the ALJ must explain how, given these two factors, he considered the evidence for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Moreover, the Ninth Circuit recently determined that in cases falling under the March 2017 amended SSA regulations, the "specific and legitimate" standard is also no longer applicable. *See Woods*, 32 F.4th at 792. In *Woods*, the Ninth Circuit concluded the following:

> Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id.* (quotations and internal citations omitted). Thus, it is not required that an ALJ provide "specific and legitimate reasons" to reject a treating physician's assessment. *Id.* at 791.

As discussed previously, the ALJ, not the reviewing court, is responsible for resolving any conflicts or ambiguities within the medical testimony and medical record. *See Andrews*, 53 F.3d at 1039. In effect, when more than one rational interpretation could emerge from the evidence of record, "the ALJ's decision must be upheld." *Orn*, 495 F.3d at 630; *see also Matney v. Sullivan*, 981 F.2d 1015, 1019 (9th Cir. 1992) (citations omitted) ("if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Substantial evidence supports the ALJ's decision that Dr. Knievel's opinions were "not consistent with the record nor supported by the examinations performed." (Doc. 9-3 at 12). *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Magallanes*,

881 F.2d at 751) ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."). The ALJ indicated that he made his decision after "a thorough review of the evidence of record, including the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, treatment notes and other relevant evidence." (Doc. 9-3 at 10). And indeed, in the text preceding and following the ALJ's discussion of Dr. Knievel's opinion, though not always specifically labeling as such, the ALJ recounts specific consistent and inconsistent record evidence that both supports and undermines all the medical sources' medical opinions, including Dr. Knievel's. (Doc. 9-3 at 6–10).

As an example, the ALJ noted office treatment records from September 2019 for the Flagstaff Center for Bone and Joint, in which, upon examination, Plaintiff showed "moderately limited range of motion and [moderately] decreased strength." (*Id.* at 12, 23). Additionally, the ALJ cited Dr. Schwartz's August 2019 opinion on behalf of the State Disability Determination Services, where Dr. Schwartz stated that Plaintiff could "lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently and stand/walk/sit for about 6 hours in an 8-hour workday, with normal breaks." (*Id.* at 14, 17). The ALJ also points to Plaintiff's testimony: "[Plaintiff] has indicated limited ability to lift, but testified to and has other instances of heavy lifting, despite these comments." (*Id.* at 14). Further, per the ALJ, "[Plaintiff] has complained of limited mobility, [but] was actively able to participate during physical therapy throughout the record." (*Id.*) These items of evidence in the record are inconsistent with Dr. Kneivel's assessment that Plaintiff could occasionally lift and carry "less than 10 lbs." in a "competitive work environment" (Doc. 8-8 at 131) and with her assessment that Plaintiff could sit, stand, and walk for "less than 2 hours" in an 8-hour workday, with 15-minute walking breaks every 15 minutes. (*Id.* at 130–31).

Thus, the Court disagrees with Plaintiff's assertions that because the "ALJ provided reasons without actual identification of inconsistent medical evidence" and

because the ALJ "identifies **nothing** in support of the bare assertion that Dr. Knievel's medical opinion is inconsistent with the record or not supported by the examinations performed," there is insufficient support for the ALJ's decision to discount Dr. Knievel's opinion. (Doc. 13 at 11–12). For one, under the March 2017 revised SSA regulations, the ALJ is not required to provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion. *See Woods*, 32 F.4th at 792 ("Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.").

Further, the Court recognizes that it would be easier to follow the ALJ's reasoning if all the considerations pertinent to his analysis of Dr. Knievel's medical opinion appeared in the same place. Nevertheless, this Court must look for the full explanation in "*all* the pages of the ALJ's decision" when determining whether substantial evidence supports that decision. *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (emphasis added). In reading the ALJ's opinion in its entirety, his reasoning can be discerned—and that is sufficient. *See Kennedy v. Colvin*, 738 .3d 1172, 1178 (9th Cir. 2013) (stating that the ALJ is only required to discuss and evaluate the evidence that supports his conclusion; he is not required to do so in a specific location within the decision); *Labine v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04528-PHX-JZB, 2020 WL 6707822, at *4 (D. Ariz. Nov. 16, 2020). ("The court reads the ALJ's decision as a whole, and not just one sentence of it in a vacuum. Thus, based on the ALJ's earlier analysis … the Court can 'reasonably discern' what evidence the ALJ is referring to when stating that [the evidence is unsupportive or inconsistent].").

Plaintiff also argues that the ALJ committed legal error by rejecting Dr. Knievel's opinion "simply" because it indicates that Plaintiff is "completely debilitated." (Doc. 13 at 11) (citing *Revels*, 874 F.3d at 666 (stating that rejection of a claimant's testimony based on claimant's RFC is "put[ting] the cart before the horse."); *Laborin v. Berryhill* (867 F.3d 1151, 1154 (9th.Cir. 2017) (indicating it is against "regulations, Social Security Rulings, and … case law [to] discredit [a] claimant's symptom testimony because it is

1    'inconsistent with' the RFC in their disability determinations.")). Plaintiff states that
2    although the *Revels* and *Laborin* courts identified legal error in rejecting a claimant's
3    symptom testimony evidence, the courts' reasoning applies to medical opinion evidence
4    as well. (Doc. 13 at 12) (quoting 20 C.F.R. § 404.1545(a)(3)) ("[the *Revels* and *Laborin*
5    courts'] reasoning certainly is applicable to medical opinion evidence as a claimant's
6    RFC must take into account 'any statements about what you can still do that have been
7    provided by medical sources, whether or not they are based on formal medical
8    examinations.'").

9        However, the Court is unconvinced by Plaintiff's argument. First, as the Court
10   previously established, the ALJ did not reject Dr. Knievel's opinion "simply" because the
11   opinion indicates Plaintiff is "completely debilitated." Rather, the ALJ's rejection of Dr.
12   Knievel's medical opinion was founded on substantial evidence located throughout the
13   ALJ's explanation in "all the pages of the [his] decision." *Kaufmann*, 32 F.4th at 851.
14   Second, as Plaintiff states, 20 C.F.R. § 404.1545(a)(3) requires that an ALJ, in assessing
15   a claimant's RFC, incorporate "any statements about what you can still do that have been
16   provided by medical sources, whether or not they are based on formal medical
17   examinations." But while the ALJ's calculation of the RFC must *account* for medical
18   sources' "statements about what [a claimant] can still do," this does not mean these
19   individual statements are *equivalent to* the claimant's RFC. *Id.* Thus, by opining that Dr.
20   Knievel's indication that "claimant is completely debilitated" is "not consistent with the
21   record" (Doc. 9-3 at 13), the ALJ was not "discrediting [Dr. Knievel's opinion] because it
22   is inconsistent with the RFC," nor "putt[ing] the cart before the horse." *Revels*, 874 F.3d
23   at 666; *Laborin*, 867 F.3d at 1154.

24       Accordingly, this Court finds that the ALJ did not commit materially harmful legal
25   error, as the ALJ reasonably determined that Dr. Knievel's medical findings were not
26   supported by nor consistent with the medical record. *See Andrews*, 53 F.3d at 1039–40.
27   ("The ALJ is responsible for determining credibility, resolving conflicts in medical
28   testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the

1  evidence is susceptible to more than one rational interpretation.").

2  **C.  Opinion of Treating Physician Dr. Rishi Patel**

3  Plaintiff also asserts that the ALJ did not provide adequate justification for his

4  rejection of Dr. Rishi Patel's opinion. (Doc. 13 at 14). Specifically, Plaintiff argues that

5  the ALJ's rational was inadequate because (1) the ALJ's conclusion that Dr. Patel's

6  opinions were not consistent with each other was not a valid reason to reject them; (2) Dr.

7  Patel's statements are, in fact, "largely consistent with each other," and (3) the ALJ did

8  not address Dr. Patel's "detailed explanations" regarding Plaintiff's limitations and

9  impairments, instead relying on "extra-record evidence" to reach his conclusions. (Doc.

10  13 at 14–15).

11  Plaintiff's medical record shows that Dr. Patel treated Plaintiff on five occasions:

12  May 11, 2021; June 10, 2021; August 10, 2021; January 26, 2022; and February 14,

13  2022. (Doc. 9-10 at 11, 16, 21, 24, 26). Dr. Patel provided three medical opinion

14  statements to the SSA, dated January 26, 2022; November 29, 2022; and March 17, 2023.

15  (Doc. 9-10 at 2–4; Doc. 9-9 at 2–4; Doc. 12-8 at 52–56).

16  In his January 2022 Medical Source Statement questionnaire regarding "Physical

17  Ability to Do Work-Related Activities," Dr. Patel reported that Plaintiff had a "hip/thigh"

18  impairment resulting in limited ROM following repetitive use and "functional loss or

19  functional impairment." (Doc. 9-10 at 2). Dr. Patel also opined that Plaintiff had a left

20  "shoulder and/or arm condition" that resulted in "[p]ain on movement" and impacted

21  Plaintiff's ability to work. (*Id.*) In addition, Dr. Patel affirmed that after repetitive use,

22  Plaintiff had "functional loss or functional impairment and or additional limitation of

23  ROM of the spine," including "localized tenderness or pain to palpation for joints and/or

24  soft tissue of the spine." (*Id.*) In Dr. Patel's estimation, due to these

25  impairments/conditions, Plaintiff was likely to be absent from work "About once or twice

26  per month" on average, and Plaintiff had a marked and extreme[2] "impairment of ability to

27  deal with *any* work stress." (*Id.*) Dr. Patel also reported that within an 8-hour workday,

28  ---
[2] Dr. Patel circled both the "marked" and "extreme" response options for the prompt, "[e]stimated impairment of ability to deal with *any* work stress." (Doc. 9-10 at 2).

Plaintiff had the "maximum capacity to [lift and/or carry]" five pounds (both occasionally and frequently), to stand and be productive for "Less than 1 hour," and to sit and be productive for a maximum of "2 hours," while needing to alternate sitting (for 20-30 minutes) with standing (for 1 hour). (*Id.* at 3). Further, Dr. Patel indicated that Plaintiff could never safely climb, stoop, kneel, crouch, or crawl, but could occasionally safely balance. (*Id.*) Moreover, Dr. Patel stated that Plaintiff's condition lasted 12 months and would be expected to last for 12 months. (*Id.* at 4).

Dr. Patel's November 2022 Attending Physician Statement questionnaire regarding "Physical Ability to Do Work-Related Activities" revealed that in Dr. Patel's opinion, Plaintiff had a "hip, thigh knee or leg impairment" resulting in limited ROM following repetitive use and "functional loss or functional impairment" for both the "[h]ip/[t]thigh" and "[k]nee/[l]ower [l]eg." (Doc. 9-9 at 2). As he did in January 2022, Dr. Patel stated that Plaintiff had a left "shoulder and/or arm condition" that resulted in "[p]ain on movement" and impacted Plaintiff's ability to work. (*Id.*) In addition, Dr. Patel again affirmed that after repetitive use, Plaintiff had "functional loss or functional impairment and or additional limitation of ROM of the spine," including "localized tenderness or pain to palpation for joints and/or soft tissue of the spine." (*Id.*) However, in the November 2022 statement, Dr. Patel also added that Plaintiff had "guarding or muscle spasm of the spine" and that Plaintiff's spinal condition was "severe enough to result in abnormal gait." (*Id.*) Further, Dr. Patel estimated that due to these impairments/conditions, Plaintiff was likely to be absent from work "[m]ore than four times a month" on average, and Plaintiff had a marked[3] "impairment of ability to deal with *any* work stress." (*Id.*) Dr. Patel also reported that within an 8-hour workday, Plaintiff had the "maximum capacity to [lift and/or carry]" five pounds (both occasionally and frequently) and to both stand and sit and be productive for a maximum of "Less than 1 hour," while needing to alternate sitting and standing for "1 hour" each, "several times daily." (*Id.* at 3) Plaintiff also now needed to elevate both legs "nightly," per Dr. Patel.

---

[3] Here, Dr. Patel circled only the "marked" response option for the prompt, "[e]stimated impairment of ability to deal with *any* work stress." (Doc. 9-9 at 2).

(*Id.*). Additionally, as in January 2022, Dr. Patel indicated that Plaintiff could never safely climb, stoop, kneel, crouch, or crawl, but could occasionally safely balance. (*Id.*) Further, Dr. Patel again stated that Plaintiff's condition lasted 12 months and would be expected to last for 12 months. (*Id.* at 4).

In addition, on the November 2022 Attending Physician Statement questionnaire, Dr. Patel was ask to "[i]dentify the factors (e.g., the particular medical signs, laboratory findings, or other factors described above) that support[ed his] assessment" in narrative form. (*Id.*) In his response, Dr. Patel stated,

> Pt suffered l shoulder tear on MRI 10/22. Pt has thoracic degenerative disc disease on x-ray 08/09/22. Pt has closed fx [fracture] plantar foot 10/21. Pt has a chronic disability affecting his lumbar spine + l shoulder. The pt is in chronic pain + does have a pain management provider that he regularly attends.

(*Id.* at 4–5).

In his March 2023 Attending Physician Statement questionnaire regarding "Cervical Spine (Neck) Disorder Including Lumbar Impairments," Dr. Patel listed Plaintiff's diagnosis as "[l]umbar Stenosis/OSA" and indicated that this condition had lasted 12 months and would be expected to last 12 months. (Doc. 12-8 at 52). In addition, Dr. Patel asserted that Plaintiff had "functional loss and/or impairment of the cervical spine" and lumbar spine, including incoordination, less movement than normal, weakened movement, pain on movement, swelling, excess fatigability, atrophy of disuse, instability, and "interference with sitting, standing … and/or weight bearing." (*Id.*) Also according to Dr. Patel, in an 8-hour day, Plaintiff was able to "[stand] and/or [walk]" and "[sit] and/or [walk]" for "[l]ess than 1 hour" each. (*Id.* at 54). Further, Dr. Patel indicated that during an 8-hour day, Plaintiff required periods of walking around (for an unspecified amount of time) every 60 minutes and required unscheduled breaks every hour for 10–20 minutes. (*Id.*) Dr. Patel additionally opined that in a competitive work situation, Plaintiff could "[n]ever," "[o]ccasionally," and "[f]requently" lift and carry 10

pounds. (*Id.* at 55). Moreover, Dr. Patel stated Plaintiff could never stoop or crouch in an 8-hour working day. (*Id.*) And on average, Dr. Patel estimated that Plaintiff would be absent from work due to impairments or treatment "[a]bout twice a month." (*Id.*)

Furthermore, on the March 2023 Attending Physician Statement questionnaire, Dr. Patel was asked to "[i]dentify the factors … that support[ed] his] assessment" in narrative form. (*Id.*) In his response, Dr. Patel stated,

> Mr. Wallis has numerous conditions including: OSA [obstructive sleep apnea], obesity, HTN [hypertension], lumbar stenosis + lt shoulder OA [osteoarthritis]. His main condition is lumbar stenosis that limits his ability to bend, stretch, + touch his toes. This patient has radiographic evidence for diffuse OA / DJD [degenerative joint disease] of his thoracic spine + lumbar spine. This pt is also followed by orthopedics. The pt also sustained a labrum tear of his l shoulder as displayed on MRI 11/8/22.

(*Id.* at 56).

Addressing Dr. Patel's opinions, the ALJ wrote:

> The undersigned finds these are not persuasive as they are not consistent with the record nor consistent with one another, and not supported by the totality of examinations performed or the treatment offered. While the record indicate[s] some impairment in strength and flexibility, there is no evidence to support limitations to this degree. (Exhibit 20F, 23F) In addition, many of the ratings have no basis in the record, nor clearly explained in this opinion. The opinions are contradictory, without evidence of significant interval change. Overall, these limitations would be consistent with significant intervention with constant need for medical management and need for further assistive devices.

(Doc. 9-3 at 13).

Plaintiff argues that the ALJ's statement that Dr. Patel's opinions are contradictory "is not a valid reason for rejecting medical opinion evidence." (Doc. 13 at 14). However,

the Court disagrees. Other courts in the Ninth Circuit have determined that the presence of inconsistencies between a medical source's opinions has served as a specific and legitimate reason to reject these opinions. *See Houghton v. Comm'r, Soc. Sec. Admin.*, 493 F. App'x 843, 845 (9th Cir. 2012) (holding that the ALJ's conclusion that a medical source's opinions were "internally inconsistent" established a specific and legitimate basis to discount them); *Tristan v. Comm'r of Soc. Sec. Admin*, No. CV-20-02240-PHX-DWL, 2022 WL 1707953, *3 (D. Ariz. May 27, 2022) ("[an] ALJ's finding of internal consistency[,] … [whether] characterized as a flaw of "consistency" or "supportability," … serves as a permissible basis for discounting … a medical opinion under the new SSA regulations."); *Erasun v. Comm'r of Soc. Sec. Admin*, No. CV-20-08297-PCT-DWL, 2022 WL 620949, *5 (D. Ariz. Mar. 3, 2022) ("[T]he Ninth Circuit has … remarked that internal inconsistency between a physician's own … opinions is [a valid] reason to reject [an] opinion.") (citation omitted).

Here, there are multiple inconsistencies across Dr. Patel's January 2022, November 2022, and March 2023 medical opinions, which the ALJ describes in his decision. (Doc. 9-3 at 13). For example, the ALJ noted that Dr. Patel opined that Plaintiff would require "more than 2 absences a month" in January 2022; "more than 4 absences a month" in November 2022; and "2 absences a month" in March 2023. (*Id.*) As another example, the ALJ identified Dr. Patel's opinions that Plaintiff had "extreme" limitations in handling stress in January 2022[4]; "marked" limitations in handling stress in November 2022; returning to "extreme" limitations in March 2023. (*Id.*) These internal inconsistencies comprise substantial evidence supporting the ALJ's decision to reject Dr. Patel's medical opinions in aggregate. *Erasun*, 2022 WL 620949 at *5 ("internal inconsistency between a physician's own … opinions is [a valid] reason to reject [a medical] opinion.") (citation omitted).

Moreover, the ALJ's decision to reject Dr. Patel's opinions is also supported by

---

[4]And, as the Court noted previously, in January, 2022, Dr. Patel circled both the "marked" and "extreme" response options for the prompt, "[e]stimated impairment of ability to deal with *any* work stress." (Doc. 9-10 at 2).

substantial evidence showing that Dr. Patel's medical opinions are inconsistent with other sources in the record. (Doc. 9-3 at 13). Here, the ALJ supported his decision to reject Dr. Patel's medical opinions by recounting specific contradictory evidence in the text preceding and following his discussion of Dr. Patel's opinions. (Doc. 9-3 at 6–14). *See Kennedy*, 738 .3d at 1178 (stating that the ALJ is required only to discuss and evaluate the evidence that supports his conclusion; he is not required to do so in a specific location within the decision). For example, as Defendant mentions, prior to discussing Dr. Patel's opinion, the ALJ discusses Dr. Garrison's March 2019 opinion, which states that Plaintiff "presented with normal gait, with no issues performing orthopedic maneuvers" and "normal range of motion." (*Id.* at 12–13; 23). These statements are inconsistent with Dr. Patel's March 2023 opinion stating that Plaintiff "would need a cane while [walking] for less than an hour," and with Dr. Patel's January 2022 and November 2022 opinions stating that "claimant has limited range of motion," (*Id.* at 13). As another example, following his discussion of Dr. Patel's opinion, the ALJ discusses Dr. Schwartz's August 2019 opinion on behalf of the State Disability Determination Services, in which Dr. Schwartz opined that Plaintiff could lift 20 pounds occasionally and "stand/walk/sit" for about 6 hours in an 8-hour workday with normal breaks. (*Id.* at 14; 17). This contradicts Dr. Patel's varying opinions in January 2022 (Plaintiff could "lift/carry 5 pounds occasionally" and "[stand/walk/sit] for less than 1 hour"); November 2022 (Plaintiff could "lift/carry less than 5 pounds occasionally); and March 2023 (Plaintiff could "[lift/carry] 10 pounds"). (*Id.* at 13).

Plaintiff further asserts that the ALJ inappropriately rejected Dr. Patel's medical opinions because notwithstanding any internal inconsistencies, Dr. Patel's statements remain "largely consistent with each other." (Doc. 13 at 14). The Court finds Plaintiff's argument unconvincing. As previously discussed, the ALJ found Dr. Patel's opinions unpersuasive, and substantial evidence supports the ALJ's finding. Thus, while the fact that there is consistent information across Dr. Patel's statements reinforces Dr. Patel's medical opinion, this does not preclude the ALJ's appropriate rejection of the opinion.

*See Winton v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00872-PHX-JAT, 2022 WL 2286802, at *6 (D. Ariz. June 24, 2022) (determining that when substantial evidence supported an ALJ's decision, other information from medical reports (that the ALJ allegedly omitted from his decision) that was consistent with a provider's medical opinion "simply corroborate[d that provider's] appropriately rejected medical opinion.").

Additionally, Plaintiff claims that the ALJ used "extra-record evidence" to reach the conclusion that Dr. Patel's statements "would be consistent with significant intervention with constant need for medical management and need for further assistive devices," reasoning that there is no other evidence in the record to support this conclusion. (Doc. 13 at 15). Plaintiff argues that this is another inappropriate reason for the ALJ to reject Dr. Patel's medical opinion. (*Id.*) (citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)) (concluding that an ALJ's reliance on extra-record evidence, such as medical textbooks, to assess a claimant's condition did not sufficiently validate the ALJ's decision to reject a physician's medical opinion).

Here, the Court acknowledges that an ALJ is not at liberty "to substitute [his] own medical judgment for that of a medical expert." *Powers v. Comm'r of Soc. Sec. Admin.*, No.CV-16-03427-PHX-GMS, 2018 WL 1182554, *3 (D. Ariz. Mar. 7, 1018) (citation omitted). However, there is no concrete evidence in the record to show that the ALJ indeed consulted "extra-record evidence" in reaching his conclusion. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (indicating a court "cannot … speculate as to the grounds for the ALJ's conclusions."); *Garrison*, 759 F.3d at 1010 ("[A court] may not affirm [nor deny] the ALJ on a ground upon which he did not rely.").

Further, even if the ALJ did in fact err by stating a medical conclusion, substantial evidence still supports the ALJ's decision to reject Dr. Patel's medical opinions, as discussed above. Thus, regardless, any such error, real or hypothetical, is harmless. *See id.* at 1099 ("An error is harmless … if the agency's path may reasonably be discerned, even if the agency explains its decision with [less-than-ideal] clarity.") (citations and

internal quotation marks omitted); *Molina*, 674 F.3d at 1115 (stating an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.").

Accordingly, this Court finds that the ALJ did not commit materially harmful legal error in rejecting Dr. Patel's medical opinions, as the ALJ reasonably determined that Dr. Patel's opinions were internally inconsistent and otherwise unsupported by or inconsistent with Plaintiff's medical record. *See Matney*, 981 F.2d at 1019 (citations omitted) ("The [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

### D.   Defendant's Statutory Authority and Plaintiff's Constitutional Right to Due Process

Plaintiff, in his opening brief, initially claimed that the SSA's 2017 revisions to the medical evidence regulations under 20 C.F.R. § 404.1520c exceed Defendant's statutory authority under section 405(b)(1) of the Social Security Act. (Doc. 13 at 16). Essentially, Plaintiff argued that while 20 C.F.R. § 404.1520c requires an ALJ to consider "the weight afforded to medical opinion evidence, considering: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors …," it also only requires an ALJ to "***articulate*** how the supportability and consistency factors were considered." (*Id.* at 17) (citing 20 C.F.R. § 404.1520c). Per Plaintiff, because the 2017 revisions require an ALJ only to discuss the impact of supportability and consistency factors in his decision, not other factors such as the "treatment and examining relationship," they exceed Defendant's statutory authority by violating 42 U.S.C. § 405(b)(1)'s requirement that Defendant state "the reason or reasons upon which [an unfavorable disability determination] is based." (*Id.* at 16; 18) (citing 42 U.S.C. § 405(b)(1)).

However, Defendant correctly countered that the Ninth Circuit recently held that "[t]he 2017 medical-evidence regulations are valid under the Social Security Act" and concluded that the revised regulations "are not 'manifestly contrary to the statute.'" (Doc.

17 at 8) (quoting *Cross v. O'Malley*, 89 F.4th 1211, 1215–16 (9th Cir. 2024)). Specifically, Defendant states that the *Cross* court found that the Social Security Act places no restriction on Defendant's authority to "regulate the manner in which medical-evidence factors should be analyzed and discussed." *Id.* (quoting *Cross*, 89 F.4th at 1215) (citation omitted). Further, as Defendant asserts, while the Social Security Act "broadly requires adjudicators to discuss their findings and reasons," at no point does it specify "the factors an [ALJ] must discuss when evaluating medical opinions. *Id.* (citing 42 U.S.C. § 405(b)(1)).

Moreover, this Court, in its own recent analysis of a similar argument, determined that several courts of appeal "have generally construed § 405(b)(1) as requiring not an exhaustive discussion of every probative fact, but only enough reasoning to permit a reviewing court to determine whether [an] ALJ's decision is supported by substantial evidence." *White v. Comm'r of Soc. Sec. Admin.*, No. CV-22-08113-PCT-JAT, 2023 WL 4862684, *5 (D. Ariz. July 31, 2023) (citations omitted). Hence, the Court found that 42 U.S.C. § 405(b)(1) requires an ALJ to discuss only those considerations that led to his decision, providing enough detail to enable a claimant and reviewing court to ascertain whether the ALJ correctly and reasonably applied the law to the evidence of record. *Id.* at *6. The Court also concluded that there is "no manifest conflict" between the 2017 regulations and 42 U.S.C. § 405(b)(1), and any inquiry regarding "whether an ALJ's decision complies with [§ 405(b)(1)] will [have] typically been subsumed into" the overarching examination of whether his decision was supported by substantial evidence and free of legal error. *Id.*; *see also U.S. v. Mead. Corp.*, 533 U.S. 218, 219 (2001) (stating any agency regulation that elucidates a statutory provision is binding "unless … manifestly contrary to the statute."). Consequently, the Court finds that Defendant, in following the requirements of 20 C.F.R. § 404.1520c, did not exceed his statutory authority under 42 U.S.C. § 405(b)(1).

Plaintiff concedes in his Reply that "*Cross* forecloses Plaintiff's arguments as to whether Defendant's enactment of 20 C.F.R. § 404.540c exceeds Defendant's statutory

authority under the Social Security Act." (Doc. 18 at 9). Instead, Plaintiff maintains that the SSA's 2017 revision requirement that an ALJ to consider "each factor, but only articulate how two factors were considered," violates Plaintiff's constitutional right to due process of law because this instruction "deprives the claimant of even the ***ability*** to respond to such reasons during the administrative process." (*Id.* at 10).   Defendant counters that Plaintiff's "conclusory due process challenge is simply a rehashing of his prior arguments." (Doc. 17 at 10). Likewise, the Court finds Plaintiff's argument unconvincing.

The Court recognizes that Social Security disability applicants are entitled to due process in the determination of their claims. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and at in a meaningful manner." *Ford v. Saul*, 950 F.3d 1141, 1158 n.12 (9th Cir. 2020) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)); *see also Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001) ("[D]ue process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied."). In general, the statutes and regulations that govern Social Security satisfy this fundamental requirement. Under the United States Code and applicable regulations, a claimant has a right to appear at a hearing before an ALJ and the right to present evidence, including testimony, before his claim for disability benefits is denied. *See* 42 U.S.C. 405(b)(1) and 20 C.F.R. §§404.944, 404.950(a). Here, the fundamental requirement of due process has been satisfied. The ALJ provided Plaintiff with a detailed "Notice of Decision—Unfavorable" that gave Plaintiff an opportunity to appeal the ALJ's decision (Doc. 9-3), and prior to Defendant's denial of Plaintiff's claim, Plaintiff appeared at a hearing before the ALJ, presented evidence, and testified. (Doc. 9-3 at 28–50); *Ford*, 950 F.3d at 1158 n.12.

Additionally, to succeed in establishing a due process violation, a claimant must demonstrate that "the ALJ's behavior in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Bayliss v. Barnhart*, 427 F.3d 1211,

1214–15 (9th Cir. 2005) (citation and internal quotations omitted). Plaintiff has failed to meet this requirement. As discussed above, this Court has determined that the ALJ, in outlining how the supportability and consistency factors influenced his decision as 20 C.F.R. § 404.1520c requires, did not exceed his statutory authority under 42 U.S.C. § 405(b)(1). Further, by sufficiently describing these factors, the ALJ provided substantial evidence to support his decision to reject the medical opinions of Dr. Knievel and Dr. Patel, and ultimately, Plaintiff's disability claim. In effect, in formulating his decision, the ALJ acted within his statutory authority by appropriately adhering to the SSA's 2017 revised medical evidence regulations, which are valid under the Social Security Act. In the Court's assessment, this behavior is not "extreme," nor does it "display clear inability to render fair judgment." *Bayliss*, 427 F.3d at 1214–15.

Thus, the Court concludes that by providing sufficient and legally permissible reasons supported by substantial evidence for rejecting the medical opinions of Dr. Knievel and Dr. Patel, the ALJ adhered to 20 C.F.R. § 404.1520c and 42 U.S.C. § 405(b)(1). In doing so, the ALJ did not exceed his statutory authority nor deny Plaintiff his constitutional due process rights.

### e.    Further Proceedings

Finally, Plaintiff requests the Court award Plaintiff attorney's fees and costs under the Equal Access to Justice Act and that the Court remand this case for further administrative proceedings. (Doc. 13 at 21).  However, because the Court is upholding the ALJ's decision and has found that Defendant has not exceeded his statutory authority nor deprived Plaintiff of due process, the Court denies Plaintiff's requests.

### IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED.**

///

///

///

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 16th day of October, 2024.

James A. Teilborg
Senior United States District Judge